Jason A. Geller (SBN 168149)
E-Mail:  jgeller@fisherphillips.com
Danielle S. Krauthamer (SBN 305311)
E-Mail:  dkrauthamer@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000

Attorneys for Defendants
ATIEVA, INC, a California Corporation, HANS-CHRISTOPH
ECKSTEIN; WIEBKE ECKSTEIN; and ERIC MAGNUS BACH

HARNESS, DICKEY & PIERCE, P.L.C.
Monte L. Falcoff (*Pro Hac Vice pending*)
Email: mlfalcoff@harnessip.com
Glenn. E. Forbis (*Pro Hac Vice pending*)
Email: gforbis@harnessip.com
Jeremiah J. Foley (*Pro Hac Vice pending*)
Email: jfoley@harnessip.com
5445 Corporate Drive, Suite 200
Troy, MI  48098
Tel.: 248-641-1600

Of Counsel for Defendants
ATIEVA, INC, a California Corporation, HANS-CHRISTOPH
ECKSTEIN; WIEBKE ECKSTEIN; and ERIC MAGNUS BACH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCEL SIELER, an individual, | Case No:   5:22-cv-00063-NC |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO CALIFORNIA *CODE OF CIVIL PROCEDURE* SECTION 425.16** |
| v. | |
| ATIEVA, INC, a California Corporation DBA LUCID MOTORS, HANS-CHRISTOPH ECKSTEIN, an individual, WIEBKE ECKSTEIN, an individual, ERIC MAGNUS BACH, an individual, | |
| Defendants. | **DATE:          October 12, 2022**<br>**TIME:           1:00 p.m.**<br>**CTRM:          5, 4th Floor** |
| | Complaint Filed:  January 5, 2022<br>FAC Filed:         March 21, 2022<br>SAC Filed:         May 2, 2022<br>TAC Filed:         August 19, 2022<br>Trial Date:         None Set |

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION.................................................................................................1

I.      INTRODUCTION ........................................................................................2

II.     FACTUAL BACKGROUND .......................................................................4

     **A.**    Between 2017 – 2018, Sieler Files and Settles a Lawsuit Against Lucid, Releasing and Dismissing all Claims..........................................................4

     **B.**    Sieler's Instant Lawsuit Against Lucid.......................................................5

III.    LEGAL ARGUMENT .................................................................................6

     **A.**    California's Anti-SLAPP Statute Bars Sieler's Claims. ...............................6

          **1.**    The Anti-SLAPP Protections are Broadly Construed and Apply to Both Entities and Individuals..............................................................7

          **2.**    The Anti-SLAPP Statute Has A Two-Step, Burden-Shifting Process..............8

               a.    Step One: All of Sieler's Claims "Arise From" Activity Protected By The Anti-SLAPP Statute. ...................................8

                    (i)    Sieler's Second, Third, Fourth, Fifth, and Sixth Claims are Based Upon the November 2017 Patent Application, Which is Protected Activity. ....................8

                    (ii)    Lucid's Patent Application and the Granting of Same Constituted an Act in Furtherance of the Right of Petition and Free Speech. ..............................9

                        (A)Lucid's Patent Application Constitutes A "Statement or Writing Made Before an Official Proceeding Authorized By Law" or a "Statement Made in Connection With an Issue Under Consideration or Review By an Official Proceeding Authorized By Law."....................10

               b.    Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of Success On His Defamation Claim (Second Claim for Relief) Against Defendants. ................................11

                    (i)    The Allegations of the TAC Show That the "In-House" Statements and Eckstein's Alleged June 2022 Statement Are True ................................11

                    (ii)    The Broad Allegations Fail to Acquaint Defendants with What They Must Defend Against. ....................12

                    (iii)    An Alleged Defamatory Statement Must Be (i) Defamatory on its Face or (ii) Understood as Defamatory Through Extrinsic Knowledge............................13

                    (iv)    Any Alleged Defamatory Statements are Privileged Under the Common Interest Privilege. ....................14

                 c.    Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of Success On His Intentional or Negligent Misrepresentation Claims (Third and Fourth Claims for Relief) Against Defendants.............................................15

i         Case No. 5:22-cv-00063-NC

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

(i)    Sieler Released Lucid from Liability For The Intentional and Negligent Misrepresentation Claims ..............16

(ii)    The Misrepresentation Claims are Precluded by the Previous Judgment .....................................................16

(A) California Law Governs the Preclusive Effect of the Prior Decision. ..................................................16

(B) Preclusion Bars Claims Based on the Previously Litigated Wrongs and Harms, Even If New Facts or Theories Are Alleged. .................................................17

(C) The Misrepresentation Claims Are Barred Because They Were Raised and Dismissed With Prejudice In The Prior Lawsuit. ..................................................17

(iii)   The Facts Alleged Do Not Establish a Duty to Disclose. ..................................................................18

(iv)   The TAC Does Not Allege That Lucid's Nondisclosure/Concealment Was Done With the Intent that Sieler Rely On It. .............................................19

(v)    Sieler Does Not Allege That the Non-Disparagement Clause Was False At the Time. ................................19

(vi)   Facts Showing a Duty to Avoid Negligent Misrepresentation Are Not Alleged. .........................20

(vii)  Negligent Concealment or Non-Disclosure is Not Actionable. ...........................................................21

(viii)  The Misrepresentation Claims Are Barred By the Statute of Limitations. ...........................................21

d.    Step Two: Sieler Cannot Meet his Burden of Establishing a Probability of Success on His Unfair Competition Claim (Fifth Claim for Relief) Against Defendants. ...............................22

(i)    Sieler Released Lucid From Liability for the Unfair Competition Claim and it is Precluded by the Previous Judgment. ...........................................................22

(ii)    The Alleged Facts Do Not Establish a Cause of Action for Common Law Unfair Competition. .....................22

(iii)   Sieler Has Not Plead Facts Sufficient to Confer Standing for Statutory Unfair Competition. .............................23

(iv)   Sieler Failed to Plead that the Individual Defendants Directly and Actively Participated in an Unfair Business Practice. .................................................23

(v)    This Claim is Barred by the Four Year Statute of Limitations ...........................................................23

e.    Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of Success On His Breach of Contract Claim (Sixth Claim for Relief) Against Defendants. ......................24

(i)    The Clause States that Lucid Will Not Make Defamatory or Otherwise Injurious Statements Concerning Sieler. ..................................................24

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

(ii)     There is No Breach Alleged, Sieler Has Not Alleged Any Defamatory or Injurious, or Otherwise Disparaging Statements Concerning Him.................................24

IV.     CONCLUSION.................................................................................................25

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*,
119 F.Supp.3d 1117 (N.D. Cal 2015) ............................................................ 20

*Daewoo Electronics America Inc. v. Opta Corporation*,
875 F.3d 1241 (9th Cir. 2017) ....................................................................... 16

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir. 1996) ......................................................................... 22

*Federated Dept. Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ....................................................................................... 17

*Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*,
Civil Action No. 13–2034–GMS, 2015 WL 1191129 (D. Del. March 13, 2015) ........... 10

*Gonzales v. California Dep't of Corrections*,
739 F.3d 1226 (9th Cir. 2014) ....................................................................... 17

*Mindys Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) .................................................................... 10, 11

*Ohio Six Limited v. Motel 6 Operating L.P.*,
Case No. CV 11-8102 MMM (Ex), 2012 WL 12886208 (C.D. Cal. Nov. 16, 2012) ........ 21

*SDV/ACCI, Inc. v. AT&T Corp.*,
522 F.3d 955 (9th Cir. 2008) ......................................................................... 13

*SkinMedica, Inc. v. Histogen Inc.*,
869 F.Supp.2d 1176 (S.D. Cal. 2012) ........................................................... 22

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ....................................................................... 22

**California Cases**

*Albertini v. Schaefer*,
97 Cal.App.3d 822 (Cal. Ct. App. 1979) ....................................................... 12

*Aryeh v. Canon Business Solutions, Inc.*,
55 Cal.4th 1185 (Cal. 2013) ........................................................................... 24

*Baker v. Los Angeles Herald Examiner*,
42 Cal.3d 254 (Cal. 1986) .............................................................................. 12

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

*Bank of America Corp. v. Superior Court*,
   198 Cal.App.4th 862 (Cal. Ct. App. 2011) ................................................................. 18

*Bank of the West v. Superior Court*,
   2 Cal.4th 1254 (Cal. 1992) .......................................................................................... 22

*Bartholomew v. Youtube, LLC*,
   17 Cal.App.5th 1217 (Cal. Ct. App. 2017) ................................................................. 13

*Blanchard v. DirectTV, Inc.*,
   123 Cal. App. 4th 903 (2004) ................................................................................... 7, 8

*Bradstreet v. Wong*,
   161 Cal.App.4th 1440 (Cal. Ct. App. 2008) ............................................................... 23

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1996) ................................................................................................ 7

*Campanelli v. Regents of Univ. of Cal.* (1996)
   44 Cal.App.4th 572 ..................................................................................................... 11

*County of San Diego v. Ace Property & Casualty Ins. Co.*,
   37 Cal.4th 406 (Cal. 2005) .......................................................................................... 24

*DuPont Merck Phann. Co. v. Sup. Ct.*,
   78 Cal. App. 4th 562 (2000) .......................................................................................... 8

*Equilon Enters. v. Consumer Cause, Inc.*,
   29 Cal. 4th 61 (2002) .................................................................................................... 8

*Fox v. Pollack*,
   181 Cal. App. 3d. 954 (Cal. Ct. App. 1986) ............................................................... 19

*Gilbert v. Sykes*,
   147 Cal.App.4th 13 (Cal. Ct. App. 2007) ................................................................... 12

*Grenier v. Taylor*,
   234 Cal.App.4th 471 (Cal. Ct. App. 2015) ................................................................. 11

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002) .................................................................................... 7, 15

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (Cal. 2011) .......................................................................................... 23

*Macias v. Hartwell*,
   55 Cal. App. 4th 669 (1997) .......................................................................................... 7

*Manderville v. PCG&S Group, Inc.*
   146 Cal.App.4th 1486 (Cal. Ct. App. 2007) ............................................................... 19

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

*Oasis West Realty, LLC v. Goldman*,
  51 Cal.4th 810 (2011) ............................................................................................... 3

*Pastoria v. Nationwide Ins.*,
  112 Cal.App.4th 1490 (Cal. Ct. App. 2003) ........................................................... 18

*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006) ........................................................................................ 7, 8

*Shekhter v. Fin. Indem. Co.*,
  89 Cal. App. 4th 141 (Ct. App. 2001).......................................................................8

*Simpson Strong-Tie Co., Inc. v. Gore*,
  49 Cal. 4th 12 ...........................................................................................................7

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal.App.4th 153 (Cal. Ct. App. 1991) ................................................................. 19

*Taus v. Loftus*,
  40 Cal.4th 683 (Cal. 2007)............................................................................... 15, 16

*Vivian v. Labrucherie*,
  214 Cal.App.4th 267 (Cal. Ct. App. 2013) ............................................................. 24

*William L. Lyon & Associates, Inc. v. Superior Court*,
  204 Cal.App.4th 1294 (Cal. Ct. App. 2012) ........................................................... 21

**California Statutes**

Cal. Bus. & Prof. Code
  § 17200, et seq. ............................................................................................ 4, 22, 23

Cal. Civ. Code
  § 47............................................................................................................... 14, 15

Cal. Code Civ. Proc.
  § 338(d)................................................................................................................... 21
  § 425.16, *et seq.* .......................................................................................... *passim*

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1

## NOTICE OF MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

3

NOTICE IS HEREBY GIVEN that on October 12, 2022, at 1:00 p.m., or as soon thereafter as

4 the matter may be heard, in Courtroom 5 of the above-entitled Court, Defendants Atieva, Inc., Hans-

5 Christoph Eckstein, Wiebke Eckstein, and Eric Magnus Bach ("Individual Defendants"), will move this

6 Court for an order striking Plaintiff Marcel Sieler's ("Sieler" or "Plaintiff") defamation, intentional

7 misrepresentation and concealment, negligent misrepresentation, unfair competition, and breach of

8 contract claims with prejudice.[1]

9

Defendants move to strike all of Plaintiff's claims in the TAC pursuant to California *Code of*

10 *Civil Procedure* section 425.16 on the grounds that Sieler does not and cannot plausibly allege a claim

11 for relief and Sieler's defamation, intentional misrepresentation and concealment, negligent

12 misrepresentation, unfair competition, and breach of contract claims target activity protected under the

13 Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. Additionally, Defendants

14 seek $9,906.00 in attorneys' fees and costs for bringing this Motion.  Cal. Civ. Proc. Code § 425.16(c)

15 (the "prevailing defendant" on an anti-SLAPP motion to strike "shall be entitled" to recover his or her

16 attorney fees and costs).

17

This Motion is supported by the concurrently-filed memorandum of points and authorities, the

18 accompanying declarations of Lisa Lara and Danielle S. Krauthamer, all papers and pleadings on file in

19 this action, and such matters that may be introduced at oral argument on this motion.

20

Dated:  September 2, 2022

FISHER & PHILLIPS LLP

21

By:  ___/s/ Danielle S. Krauthamer___

22

JASON A. GELLER
DANIELLE S. KRAUTHAMER

23

HARNESS, DICKEY & PIERCE, P.L.C.

24

Monte L. Falcoff (*Pro Hac Vice pending*)
Glenn. E. Forbis (*Pro Hac Vice pending*)
Jeremiah J. Foley (*Pro Hac Vice pending*)

25

Attorneys for Defendants

26

ATIEVA, INC., HANS-CHRISTOPH
ECKSTEIN; WIEBKE ECKSTEIN;

27

and ERIC MAGNUS BACH

28

---

[1] All of Plaintiff's claims in the TAC are at issue in this anti-SLAPP Motion to Strike.

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

# I.   INTRODUCTION

The United States and California Constitutions grant every person the rights to participate in government and civic affairs, speak freely on public issues and issues of public interest, and petition government officials for redress of grievances. These rights are of such fundamental importance that the Legislature enacted California Code of Civil Procedure Section 425.16 (commonly known as the anti-SLAPP statute) to provide special protections against lawsuits that may impact or chill such speech. Specifically, the anti-SLAPP law permits a defendant to file a special motion to strike at the inception of a lawsuit where the allegations are predicated on the exercise of the right to petition or speak about a "public issue or an issue of public interest."   The claims in this lawsuit fall squarely under those protections, lack merit, and should be dismissed.

Plaintiff Marcel Sieler ("Plaintiff" or "Sieler") is a former employee of Defendant Atieva, Inc. ("Lucid"), a Northern California based electric vehicle company.  Individual Defendants Hans-Christoph Eckstein, Wiebke Eckstein, and Eric Magnus Bach (the "Individual Defendants"), are directors and technical specialists at Lucid.  Sieler has filed a lawsuit against Defendants on the grounds that he invented an adaptive light module ("Patent '763"), and Defendants defamed him when they filed a patent application and received the granted Patent '763, thereby failing to identify him as an inventor and misidentifying three other employees as inventors who, according to Sieler, were *not* true inventors.

As in his First Amended Complaint ("FAC") and Second Amended Complaint ("SAC"), Sieler's Third Amended Complaint ("TAC") is wholly premised on Defendants' November 2017 patent filing. Sieler contends that Defendants defamed him by claiming that they invented Patent '763, referencing Lucid's "in-house" headlights and the "granted patent in support."  Third Amended Complaint ("TAC") (attached to the Declaration of Danielle S. Krauthamer ["Krauthamer Decl."] as Ex. C), ¶ 36.  Sieler also contends that Defendants concealed/failed to disclose the November 2017 patent filing for Patent '763. TAC, ¶ 49.  Sieler's unfair competition claim arises out of the claimed "unlawful, unfair, or fraudulent" business act of filing the patent application prior to resolution of the June 2017 Action.  Lastly, the breach of contract claim contends an alleged breach of the non-disparagement clause in a February 2018 settlement between Sieler and Lucid agreement arises from Defendants' November 2017 patent application, which ended up defaming Sieler, who was made out to look like a "liar" for claiming he

1   invented the patent.  TAC, ¶ 67.

2       As all of Plaintiff's claims are based upon Defendants' patent filing (and the granting of same by

3   the United States Patent and Trademark Office ["USPTO"])—a statement made in furtherance of

4   Defendants' right to free speech—Sieler's lawsuit is subject to a special motion to strike. To survive this

5   motion, Sieler must, therefore, demonstrate a probability of prevailing on all of his claims by

6   demonstrating that the claims are "both legally sufficient and supported by a sufficient prima facie

7   showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

8   *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 810, 820 (2011) (internal citations omitted).

9       Sieler's claims, however, all independently fail as a matter of law for each of the following

10  reasons (and as set forth in Defendants' concurrently filed 12(b)(6) Motion to Dismiss): as an initial

11  matter, Sieler's intentional misrepresentation (and concealment), negligent misrepresentation, and unfair

12  competitions claims fail due to 1) Sieler agreeing to a full release of claims (including such tort claims)

13  to resolve his prior lawsuit and   2) by claim preclusion.   Specifically, Sieler signed a settlement

14  agreement ███████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████

17  ████   Further, Sieler previously raised *identical claims for intentional and negligent misrepresentation*

18  *and unfair business practices* related to his hiring, employment, and separation in a prior lawsuit and

19  dismissed them with prejudice.  Declaration of Lisa Lara ("Lara Declaration"), ¶ 2, Ex. A.

20      As for the defamation claim, the alleged comments at issue are not defamatory.  The allegedly

21  defamatory statements that the headlights were developed "in-house" and statements regarding the

22  disadvantages of stepper motors in headlights are both true statements.  Truth is an absolute defense to

23  defamation.  Sieler concedes that he was an "in-house" Lucid employee during the development of the

24  Patent '763 technology.  Further, the statements at issue in the TAC continue to be protected by the

25  common interest privilege, as they have been made to "interested" individuals; namely, those that have

26  financial, business, or organizational interests in the patent and its use.  The defamation claim also fails

27  because the TAC does not identify any of Defendants' statements that are defamatory to Sieler on their

28  face or that were interpreted by others to be defamatory to Sieler.  In fact, the TAC does not allege any

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1  of Defendants' statement that reference Sieler at all.  Instead, the TAC alleges that the *absence* of Sieler's

2  name on the cover of Lucid's patent and in marketing materials constitutes defamation.  Sieler's

3  insistence that "professionals in the trade of car lighting" would understand that "in-house" would

4  exclude Sieler as an inventor does not undo the vague nature of these allegations.

5  Whether asserted under common law or California Business & Professions Code section 17200

6  (it still remains unclear which Sieler pursues), the unfair competition claim fails substantively as 1) Sieler

7  does not have standing because he has not sufficiently alleged lost money or property; and 2) the statute

8  of limitations also bars Plaintiff's unfair competition law claim: the unfair business practices are alleged

9  to have occurred on November 2017, or "after 2017", outside of the four-year statute of limitations for

10  California *Business & Professions Code* section 17200, as this lawsuit was not filed until January 5,

11  2022.  Lastly, Sieler's breach of contract claim fails because Plaintiff cannot demonstrate violation of

12  the alleged non-disparagement clause, as Defendants did not "disparage" or "defame" him, and the filing

13  of Patent '763 and related comments regarding inventorship are not defamatory.

14  For these reasons, and those set forth in more detail below, the Court should GRANT

15  Defendants' anti-SLAPP Motion to Strike and award Defendants $9,906.00 in costs and attorneys'

16  fees for bringing this Motion.

## II.   FACTUAL BACKGROUND

### A.   Between 2017 – 2018, Sieler Files and Settles a Lawsuit Against Lucid, Releasing and Dismissing all Claims.

20  On June 1, 2017, Sieler filed a lawsuit against Lucid in the Northern District of California,

21  alleging claims for alleged failure to compensate and related wage-hour claims, as well as claims for

22  intentional and negligent misrepresentation, both of which are asserted in the instant lawsuit ("June 2017

23  Action").  Lara Declaration, ¶ 3, Ex. A.  The intentional and negligent misrepresentation claims generally

24  assert that Lucid made certain misrepresentations about his compensation and opportunities at the

25  company in order to convince him to work for Lucid and to continue to work for Lucid.  *Id.*, at ¶¶ 18-

26  20.  The matter settled on or around February 1, 2018.  *Id.*, ¶ 4, Ex. B. As part of a Settlement Agreement

27  entered into on February 1, 2018, ███████████████████████████

28  ███████████████████████████████████████████

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1

2

3

4

5                *Id.*, ¶ 6, Ex. B, at ¶ 2.  An Order of Conditional Dismissal, dismissing the claims,

6 was signed by the Honorable Donna Ryu on February 2, 2018.  *Id.*, ¶ 7, Ex.C.

7       **B.**    <u>**Sieler's Instant Lawsuit Against Lucid.**</u>

8        Despite his settlement and dismissal of prejudice of his prior claims, Sieler filed this instant

9 lawsuit against Lucid on January 5, 2022.  Dkt. 1.  After Lucid filed an anti-SLAPP Motion as to the

10 initial complaint, to the FAC Plaintiff filed on March 28, 2022, and to the SAC Sieler filed on May 2,

11 2022—as both complaints alleged claims associated with Lucid's protected activity of a patent filing—

12 the Court granted Defendants' concurrently filed Rule 12(b)(6) Motion to Dismiss, but gave Plaintiff

13 leave to amend his complaint by August 19, 2022; hence, the instant TAC.  As with the prior lawsuit,

14 the TAC alleged claims for intentional and negligent misrepresentation based on alleged statements that

15 were made to Sieler to come to work for Lucid and made during his employment in order to keep him

16 employed. TAC, ¶¶ 11-12, 17.  Specifically, the TAC alleged that Sieler moved from Germany to work

17 for Lucid based on Lucid's promises of public reputation and prestige, along with promotions, bonuses,

18 and options for granted patents. TAC, ¶¶ 11-12, 17, 42.

19        The TAC also alleges that Lucid hired  Sieler to develop headlights to be incorporated into

20 Lucid's new electric car.  *Id.*, ¶ 10.  The TAC alleges that in February 2016, Sieler invented the solid

21 state adaptive headlight to be incorporated into Lucid's cars, and on December 14, 2016, Lucid created

22 a car that included the adaptive light module he created, the Patent '763 invention.  *Id.*, ¶ 16.  Sieler

23 claims that he invented the technology claimed in U.S. Patent No. 10,232,763 ("Patent '763"), was

24 subsequently terminated, and that the named inventors are not the true inventors. *Id.*, ¶¶ 12-13, 19, 26-

25 27. Sieler alleges  Sieler contends that he later discovered that Patent '763 was issued to Lucid;[2] that he

26 was never informed of the patent application; and that Patent '763 is the basis for several pending,

27

28
       [2] Patent '763 was filed on November 27, 2017 and granted on March 19, 2019.  TAC, ¶¶ 18-19, Exhibit 2.

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1    international patent applications.  *Id.*, ¶¶ 22-24.

2          The TAC further alleges that the MLA Technology is marketed as being created "in-house." *Id.*

3    ¶¶ 36, 38, 41-42. Sieler alleges that Hans-Christoph Eckstein said "So, originally when I started out at

4    Lucid they had imagined to put all these little modules on motors. But [laughing] that's nothing you

5    really want to do in an automotive environment to get like 12 stepper motors into your headlight, so we

6    [laughing] try to go away from motors at all and make it completely digital adaptive and this efforts [sic]

7    led to this concept which is shown here [slide showing Patent '763]." *Id.*, ¶ 40. It is also alleged that the

8    Individual Defendants, on information and belief, have and continue to make statements that they are

9    the inventors "and other disparaging remarks about Mr. Sieler [sic] work." *Id.*, ¶¶ 46. The TAC alleges

10   that these statements establish a cause of action for defamation. *Id.*, ¶¶ 35-47. It further alleges that Lucid

11   made defamatory or otherwise injurious statements concerning Sieler in violation of the settlement

12   agreement's non-disparagement clause. *Id.*, ¶¶ 67. These allegations underpin Plaintiff's breach of

13   contract claim. *Id.*, ¶¶ 63-68.

14         The TAC alleges that Eric Magnus Bach stated to Sieler that he would be credited and financially

15   compensated for his inventions, and that Bach had no intent to do so. *Id.*, ¶ 49. It also alleges that the

16   claim for this misrepresentation was settled "[t]he parties entered a settlement agreement that settled

17   payment related to employment and compensation claims related to Bach's misrepresentations of

18   financial compensation." *Id.* According to the TAC, Lucid concealed and did not disclose the filed patent

19   application to Sieler, and placed a non-disparagement clause in the settlement agreement. *Id.* The TAC

20   also alleges that these purported statements amounted to intentional misrepresentation/concealment and

21   negligent misrepresentation.

22         To establish an unfair competition claim, the TAC alleges that Lucid in collusion with the

23   individual defendants used Mr. Sieler to invent the Invention, fired him, and then secretly filed a patent

24   application in order to discredit Mr. Sieler. *Id.*, ¶ 58. It also alleges that Lucid advertises that the

25   Individual Inventors are the inventors of the Invention. *Id.*, ¶ 59.

26   **III.    LEGAL ARGUMENT**

27         **A.    California's Anti-SLAPP Statute Bars Sieler's Claims.**

28         All of Plaintiff's claims against Defendants are barred by Code of Civil Procedure Section 425.16

("Section 425.16"), commonly referred to as the anti-SLAPP statute.  Section 425.16 was enacted by the Legislature in 1992, out of concern over "a disturbing increase" in lawsuits that infringe upon and potentially chill the excise of free speech. *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12. 21 (2010). Section 425.16 authorizes the filing of a special motion to strike to expedite the early dismissal of unmeritorious claims that impact free speech. *Id.*  Specifically, section 425.16, subdivision (b)(l) provides:

> A cause of action against a person arising from ***any act of that person in furtherance of the person's right of petition or free speech*** under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

The bolded phrase, "an act in furtherance of a person's right of petition or free speech," is defined in Section 425.16, subdivision (e) to include: (i) statements or writings made before an official proceeding authorized by law; (ii) statements or writings made in connection with an issue under consideration or review by an official proceeding authorized by law; (iii) statements or writings made in a place open to the public or public forum in connection with an issue of public interest; or (iv) other conduct in furtherance of the exercise of the right of free speech in connection with a public issue or issue of public interest. Code Civ. Proc.§ 425.16(e) (emphasis added); *see also Blanchard v. DirectTV, Inc.*, 123 Cal. App. 4th 903, 913 (2004).

### 1.       The Anti-SLAPP Protections are Broadly Construed and Apply to Both Entities and Individuals.

The anti-SLAPP statute encourages continued participation in matters of public significance and disposal of lawsuits brought to impede the exercise of constitutional rights. *See Macias v. Hartwell*, 55 Cal. App. 4th 669,672 (1997); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006). As  required by the statute's terms, California courts construe Section 425.16 broadly to provide expansive protection against invalid claims. See Section 425.16(a) (stating that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1996); *see also Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2002) (holding that courts have adopted "a fairly expansive view" of

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

litigation-related conduct to which Section 425.16 applies).

The anti-SLAPP statute may be used by any "person" sued for exercising his or her constitutionally protected petitioning and free speech activities, including individuals, corporations, and the government.   Cal. Code Civ. Proc. § 425.16(b); *Shekhter v. Fin. Indem. Co.*, 89 Cal. App. 4th 141, 152-53 (Ct. App. 2001) (reviewing legislative history of the word "person" as used in anti-SLAPP). Thus, both Lucid and the Individual Defendants may avail themselves of the protections of the anti-SLAPP statute.

### 2.   The Anti-SLAPP Statute Has A Two-Step, Burden-Shifting Process.

An anti-SLAPP motion is analyzed pursuant to a two-step, burden-shifting process. First, the moving party must make a prima facie showing that the challenged causes of action "arise from" protected free speech activity by demonstrating that the conduct underlying each claim fits within one of Section 425.16's four categories. *See* Code Civ. Proc.§ 425.16(b)(l); *Rusheen*, supra, 37 Cal. 4th at 1056; *Blanchard, supra*, 123 Cal. App. 4th at 917-18.

Once the moving party makes this prima facie showing, the court must presume that the purpose of the claims is to chill the moving party's exercise of protected rights. *See Equilon Enters. v. Consumer Cause, Inc.,* 29 Cal. 4th 61, 61 (2002). In order to avoid a dismissal of his or her claims, the non-moving party must then demonstrate a probability of prevailing by establishing that the claims are "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Rusheen*, *supra*, 37 Cal. 4th at 1056 (*citing Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)). Importantly, it is not enough for the non-moving party to show that his claims could survive a motion to dismiss - instead, he or she must provide the court with sufficient admissible evidence to show that there is a probability he will ultimately prevail on each claim. *See DuPont Merck Phann. Co. v. Sup. Ct.*, 78 Cal. App. 4th 562, 568 (2000).

### a.   Step One: All of Sieler's Claims "Arise From" Activity Protected By The Anti-SLAPP Statute.

#### (i)  Sieler's Second, Third, Fourth, Fifth, and Sixth Claims are Based Upon the November 2017 Patent Application, Which is Protected Activity.

Sieler's defamation claim is based on the allegation that  Defendants "published" (filed a patent

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

application" for Patent '763) a patent that lists Wiebke Eckstein, Hans-Christoph Eckstein, and Eric Magnus Bach as inventors, TAC, Ex. 2, and that this publication injured him in his "office, profession, trade or business." *See* TAC, ¶¶ 36-41, 45.  Importantly, all of the purported defamatory "statements" flow from Defendants' "publication" of (i.e., patent filing) of Patent '763.  Similarly, Sieler's claims for negligent and intentional misrepresentation are tethered to Defendants' November 2017 patent filing. *See* TAC, ¶ 49 ("Lucid **concealed and did not disclose to Mr. Sieler that it filed for a patent for his Invention in 2017.**"); ¶ 55 ("**Lucid filed the patent application for Sieler's invention**, naming Bach as inventor, right before the 2018 settlement, avoiding detection (conceal/nondisclosure)" (emphasis added)).   The unfair competition claim alleges that Defendants "committed unlawful, unfair, or fraudulent business acts. . . by **filing a patent application in November 2017 after the initiation of the 2017 lawsuit, in secret, prior to a settlement**. . . ."  TAC, ¶ 58 (emphasis added).   Accordingly, this claim also arises from the protected activity of the patent filing.  Finally, the breach of contract claim contends that Defendants violated the non-disparagement clause—that said Lucid could not defame or make "injurious statements" concerning Plaintiff—by defaming him (i.e. falsely attributing credit of Patent '763).  TAC, ¶¶ 65-67.

As such, these claims each arise from Defendants' protected activity as well.

### (ii) Lucid's Patent Application and the Granting of Same Constituted an Act in Furtherance of the Right of Petition and Free Speech.

As stated above, Section 425.16, subdivision (e) sets forth the free speech activities that qualify under the Anti-SLAPP statute: (i) statements or writings made before an official proceeding authorized by law; (ii) statements or writings made in connection with an issue under consideration or review by an official proceeding authorized.by law; (iii) statements or writings made in a place open to the public or public forum in connection with an issue of public interest; or (iv) other conduct in furtherance of the exercise of the right of free speech in connection with a public issue or issue of public interest. Code Civ. Proc.§ 425.16(e). As set forth below, Lucid's patent application, which lists Wiebke Eckstein, Hans-Christoph Eckstein, and Eric Magnus Bach as inventors, and the granting of same qualifies under prong (i): any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law and prong (ii) statements or writings made in

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

connection with an issue under consideration or review by an official proceeding authorized by law.

**(A) Lucid's Patent Application Constitutes A "Statement or Writing Made Before an Official Proceeding Authorized By Law" or a "Statement Made in Connection With an Issue Under Consideration or Review By an Official Proceeding Authorized By Law."**

"Statements made while petitioning government agencies (including the PTO) qualify as protected activity under the anti-SLAPP statute." *Gilead Sciences, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 13–2034–GMS, 2015 WL 1191129, at *6 (D. Del. March 13, 2015).   In *Gilead Sciences*, Gilead Sciences, Inc. brought a patent infringement suit against defendant Abbott Laboratories, Inc. ("AbbVie"), contending that AbbVie falsely and knowingly represented to the USPTO that it invented a highly valuable method of treating the Hepatitis C virus. *Id.* at * 1.  AbbVie brought a Motion to Strike pursuant to California's Anti-SLAPP statute. *Id.*   The parties and the court agreed that California law applied – with that in mind, the court granted AbbVie's anti-SLAPP motion. *Id.* at *9. The court concluded that AbbVie had met its burden to show that it engaged in protected activity through **provisional patent applications and declarations to the PTO**, and that this conduct constituted a "writing" made before an official proceeding.  *See id.* at *6.   Additionally, statements made when petitioning the PTO constituted protected activity for purposes of the anti-SLAPP motion. *Id.*   The court also agreed that Gilead could not meet its burden to establish a probability of success on its unfair business practices and slander claims.

Likewise, numerous courts in the 9th Circuit agree that analogous conduct—filing of a trademark application or a copyright termination notice, for example—constitutes protected activity that can satisfy the first prong of an anti-SLAPP motion.  For example, *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) involved an anti-SLAPP motion filed in response to plaintiff's lawsuit that defendants engaged in trademark infringement; legal malpractice; and breach of fiduciary duty arising from a trademark registration.  The court in *Mindys* stated:

> The filing of a trademark application is a formal communication to the USPTO seeking official action in a process governed by statute. See 15 U.S.C. § 1051 ("Application for registration; verification"). **We conclude that the application is protected by the anti-SLAPP statute as a "writing made before ... [an] executive [or] ... other official proceeding authorized by law."** Cal.Civ.Proc.Code § 425.16(e)(1). The application may

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

also be a "writing made in connection with an issue under consideration ... by ... [an] executive ... body, or any other official proceeding." Id. § 425.16(e)(2).

Similarly, in addition to qualifying as a protected activity under the first anti-SLAPP category, the patent filing and the granting of same by the USPTO qualifies under the Third category as a writing made in connection with an issue under consideration by an official proceeding authorized by law. *Mindys*, 611 F.3d at 597.  The USPTO is a federal agency authorized to grant U.S. patents and registering trademarks based on the Commerce Clause of the United States Constitution.  Article I, Section 8, Clause 3.  Accordingly, a communication to the USPTO requesting a patent be issued, and listing out the patent inventors, qualifies as a statement made in connection with an issue under review in an official proceeding.

**b.**  **Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of Success On His Defamation Claim (Second Claim for Relief) Against Defendants.**

The TAC identifies two "statements" by the Defendants in support of Sieler's defamation cause of action: 1) statements that the technology described in Lucid's patent was created "in-house" (TAC, ¶¶ 38, 39, 41), and 2) a statement by Hans-Christoph Eckstein about Lucid moving away from motors in Lucid's headlights. *Id.*, ¶ 40. The TAC also vaguely references purported remarks by the individual defendants and in "other marketing" and "marketing material and live speaking events." *Id*., ¶¶ 37, 46.

**(i)  The Allegations of the TAC Show That the "In-House" Statements and Eckstein's Alleged June 2022 Statement Are True**

"Defamation is the intentional publication of a statement of fact that is *false*, unprivileged, and has a natural tendency to injure or that causes special damage." *Grenier v. Taylor*, 234 Cal.App.4th 471, 486 (Cal. Ct. App. 2015) (emphasis added). "Truth, of course, is an absolute defense to any [defamation] action." *Campanelli v. Regents of Univ. of Cal.* (1996) 44 Cal.App.4th 572, 581-582.

The TAC does <u>not</u> allege that the statement that the technology was created "in-house" is false. In fact, the TAC's allegations demonstrate that a statement asserting that the technology described in Lucid's patent was created "in-house" would be true. Merriam-Webster defines "in-house" to mean "existing, originating, or carried on *within a group or organization*." *In-house.*  Merriam-Webster.com,

https://www.merriam-webster.com/dictionary/in-house. *See Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 261-262 (using a dictionary definition to determine what a reasonable person would understand). Sieler alleges that in January 2016 he "started to work at Lucid *with a blank sheet of paper* with the goal to improve the efficiency of the MLA optics." TAC, ¶ 12 (emphasis added). "Around February 2016, Mr. Sieler invented the solid state adaptive headlight." *Id.*, ¶ 13. "Mr. Sieler's idea and concept were approved by Defendant's CTO and CEO." *Id.*, ¶ 15. "On or around December 14, 2016, Lucid unveiled its electric sedan named 'Lucid Air' with headlights containing Mr. Sieler's invention." *Id.*, ¶ 16. Sieler was terminated "around January 24, 2017." *Id.* at ¶ 17.

Similarly, Mr. Eckstein's statement "when I started at Lucid they had imagined to put all these little modules on motors… so we [laughing] try to go away from motors at all and make it completely digital adaptive and this [sic] efforts led to this concept which is shown here [slide showing Patent '763]" is not false according to the TAC. Mr. Eckstein referenced starting at Lucid and used the word "we" to describe who decided to "go away from motors." He said that Lucid made the decision, and Sieler alleges that he came up with his idea while and Lucid and it was approved by Lucid's CTO and CEO. *Id.*, ¶ 15.

These assertions establish that the technology in the patent was developed by Lucid "in house" and that Lucid's efforts which led to the patent are true. The alleged facts also establish that the technology described in the patent went from a blank sheet of paper to being built out in Lucid's car between January and December 2016, during which time Sieler was "in house" at Lucid. As such, these statements are true. Thus, Sieler does not have a probability of success on his defamation claim.

### (ii) The Broad Allegations Fail to Acquaint Defendants with What They Must Defend Against.

"Case law requires that statements alleged to constitute libel 'must be specifically identified, if not pleaded verbatim, in the complaint.'" *Gilbert v. Sykes*, 147 Cal.App.4th 13, 31 (Cal. Ct. App. 2007)). "The disparagement set forth in the complaint must be sufficiently close to the actual words proved to *acquaint a defendant with what he must defend against*.'" *Albertini v. Schaefer*, 97 Cal.App.3d 822, 832-833 (Cal. Ct. App. 1979).

The TAC alleges that "on information and belief the named inventors Wiebke Eckstein, Hans-Christoph Eckstein, Eric Magnus Bach, each, have and continue to make statements that they are the

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

1    inventors of the Invention or other disparaging remarks about Mr. Sieler [sic] work." TAC, ¶ 46. It also

2    alleges that Defendants "have published and continues [sic] to publish in its marketing material and live

3    speaking events, orally and in writing, to third parties that other people, not Mr. Sieler, invented the

4    Invention." *Id.*, ¶ 37. Inasmuch as these allegations are directed to purported libelous written statements,

5    they fail to allege the specific words of those statements. They also fail to meet the looser standard

6    required for slander. These allegations do not acquaint the Defendants with what they must defend

7    against. In fact, no specific statements made by Defendants Wiebke Eckstein, or Eric Magnus Bach are

8    alleged.

9           **(iii) An Alleged Defamatory Statement Must Be (i) Defamatory on its Face**

10          **or (ii) Understood as Defamatory Through Extrinsic Knowledge.**

11          A purported defamatory statement must either be defamatory on its face or defamatory by virtue

12   of a reader's knowledge of extrinsic circumstances. *Bartholomew v. Youtube, LLC*, 17 Cal.App.5th 1217,

13   1226 (Cal. Ct. App. 2017). "When explanation [of a purported defamatory statement] is necessary to

14   establish the defamatory meaning, the pleader must do two things: 1) Allege his interpretation of the

15   defamatory meaning of the language (the 'innuendo'); (2) support that interpretation by alleging *facts*

16   showing that the readers or hearers to whom it was published would understand it in that defamatory

17   sense (the 'inducement')." *Id.* at 1227. The alleged defamatory statement must either expressly name or

18   reasonably implicate the plaintiff to a third party. *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959

19   (9th Cir. 2008) (citing *Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1046 (Cal. 1986)). "If there is no express

20   reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the

21   plaintiff by reasonable implication." *Id*.

22          First, the statements that the invention was made "in-house" are not defamatory.  TAC, ¶¶ 38,

23   39, 41. Not only are these statements true according to the allegations of the complaint, they are not

24   defamatory. The TAC does not assert that these statements are defamatory on their face, they are not

25   statements anyone would find defamatory without further explanation. Sieler would have to allege facts

26   that would support a finding that the readers or hearers of the "in-house" statements would interpret them

27   to be defamatory against Sieler, who is not even mentioned in them. The TAC fails to do so. It summarily

28   alleges that "Professionals in the automotive community understands [sic] that the 'in-house' inventors

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

do not include Mr. Sieler but are the Individual Defendants." TAC, ¶ 38. It does not allege any <u>facts</u> showing that anyone would have understood a statement that the invention was made "in-house" as defamatory against Sieler.

The alleged June 2022 statement by Hans-Christophe Eckstein is also not defamatory. Sieler alleges the following statement to establish a claim for defamation:

> So, originally when I started out at Lucid they had imagined to put all these little modules on motors. But [laughing] that's nothing you really want to do in an automotive environment to get like 12 stepper motors into your headlight, so we [laughing] try to go away from motors at all and make it completely digital adaptive and this efforts led to this concept which is shown here [slide showing Patent '763].

TAC, ¶ 40. Again, this statement does not mention Sieler either specifically or even by general reference. It is not alleged to be defamatory on its face, and no one would understand it to be defamatory without further explanation. Sieler alleges that this statement is "mocking Mr. Sieler for the modules on motors." TAC, ¶ 40. It does not allege any <u>facts</u> showing that anyone besides Sieler understood this statement to mean anything defamatory concerning him.

Finally, the vaguely alleged "statements" that third parties invented the invention are not defamatory.  No facts are alleged supporting the fact that anyone understood a defamatory meaning when "on information and belief, Defendants have published and continues to publish in its marketing material and live speaking events, orally and in writing, to third parties that other people, not Mr. Sieler, invented the invention." TAC, ¶ 37. Likewise, no facts are alleged supporting anyone understanding a meaning that is defamatory against Sieler when "on information and belief, the named inventors Wiebke Eckstein, Hans-Christoph Eckstein, Eric Magnus Bach, each, have and continues to make statements that they are the inventors of the invention or other disparaging remarks about Mr. Sieler [sic] work." TAC, ¶ 46.

The TAC does not assert that any particular statements referenced Sieler. To the contrary, it is the *absence* of any reference to Sieler in such statements that he says amounts to defamation. In short, the allegations of the TAC do not show the circumstances that any person besides Sieler seeing or hearing those statements would understand them to be defamatory.

### (iv) Any Alleged Defamatory Statements are Privileged Under the Common Interest Privilege.

California Civil Code § 47 provides in relevant part that, "[a] privileged publication is one made

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

. . . (c) [i]n a communication, without malice, to a person interested therein, 1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motion for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47. "Interest" refers to a direct and immediate concern shared by the speaker and the hearer, such as a financial, business or organizational interest. *Kashian v. Harriman*, 98 Cal.App.4th 892, 914 (Cal. Ct. App. 2002).

Here, the Defendants' alleged comments in its investor PowerPoint (TAC, ¶ 38) during conference calls regarding headlight development (TAC, ¶ 39), and at the "Driving Vision News Lighting Workshop" (TAC, ¶ 40) are precisely the type of comments encompassed by the common interest privilege, as they have been made to "interested" individuals; namely, those that have financial, business, or organizational interests in headlight development.

Further, the common interest privilege applies to statements made without malice. The TAC summarily alleges that statements that an invention was made "in-house" and a statement regarding stepper motors were made with malice. TAC, ¶ 39, 46. "'The malice necessary to defeat a qualified privilege is 'actual malice' which is established by showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Taus v. Loftus*, 40 Cal.4th 683, 721 (Cal. 2007). Sieler summarily alleges a legal conclusion the alleged statements were made with malice. Sieler does not allege any facts showing that the statements were made with hatred or ill will towards him, or that the statements were made with a reckless disregard for his rights.

### c. Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of Success On His Intentional or Negligent Misrepresentation Claims (Third and Fourth Claims for Relief) Against Defendants.

Sieler alleges three "misrepresentations" establishing his claims for intentional and negligent misrepresentation: 1) Bach's 2015-2016 statement that Sieler would be credited for negligent misrepresentation: 1) Bach's 2015-2016 statement that Sieler would be credited for his inventions which the TAC alleges were settled (TAC, ¶¶ 49, 55); (2) Lucid concealed or did not disclose the patent

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

1  application to him (*Id.*); and (3) for intentional misrepresentation only, placing a non-disparagement

2  clause in the settlement agreement (TAC, ¶ 50).

### (i)  Sieler Released Lucid from Liability For The Intentional and Negligent Misrepresentation Claims

██████████████████████████████████████████████

███████████  ████████████████████████████████

███████████  Doc. 63-1 p. 5. For his intentional misrepresentation claim, Sieler alleges that

"[t]he parties entered a settlement agreement that settled payment related to employment and

compensation claims related to Bach's misrepresentations of financial compensation. However, Mr.

Sieler would not have signed the settlement agreement **had he known** that Lucid filed a patent

application." TAC, ¶ 49 (emphasis added). Under the header for negligent misrepresentation, he alleges

"Bach stated **in 2015-2016** that Sieler would be credited and financially compensated for his

inventions…. **The ensuing 2017 Lawsuit was settled**. However, Lucid filed the patent application for

Sieler's invention, naming Bach as inventor, **before the 2018 settlement**." TAC, ¶ 55. Again, ██████

█████████████████████████████████████████████  Yet, he is trying to raise

this claim again by saying he did not know about it.

### (ii)  The Misrepresentation Claims are Precluded by the Previous Judgment

In 2017, Sieler alleged an intentional misrepresentation claim (Lara Decl., Ex. A, ¶¶ 110-116)

and a negligent misrepresentation claim (*Id.*, ¶¶ 117-123). Following a mutual resolution, the 2017 action

and all claims asserted were dismissed with prejudice. Sieler now seeks to relitigate these claims in this

action. He cannot do so under the doctrine of claim preclusion.

### (A) California Law Governs the Preclusive Effect of the Prior Decision.

"Federal common law governs the claim preclusive effect of a dismissal by a federal court sitting

in diversity." *Daewoo Electronics America Inc. v. Opta Corporation*, 875 F.3d 1241, 1247 (9th Cir.

2017). "[F]ederal common law requires that we determine the preclusive effect of the prior decision by

reference to the law of the state where the rendering federal diversity court sits." *Id*. As the previous

decision was rendered by the Northern District of California sitting in diversity jurisdiction, California

law governs.

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

**(B)** **Preclusion Bars Claims Based on the Previously Litigated Wrongs and Harms, Even If New Facts or Theories Are Alleged.**

"Under California's doctrine of claim preclusion, 'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.'" *Gonzales v. California Dep't of Corrections*, 739 F.3d 1226, 1232 (9th Cir. 2014) "'If two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" *Id.* at 1233 (quoting *Eichman v. Fotomat Corp.*, 147 Cal.App.3d 1170 (Cal. 1983). "'If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which *could have been raised*.'" *Id.* (emphasis in original).

**(C)** **The Misrepresentation Claims Are Barred Because They Were Raised and Dismissed With Prejudice In The Prior Lawsuit.**

It is a fundamental tenet of litigation that a party cannot re-assert the same exact cause of action in a second lawsuit after raising it and then dismissing it with prejudice in a prior lawsuit. *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). The TAC itself admits that these claims were previously raised and settled, "[t]he parties entered a settlement agreement that settled payment related to employment and compensation claims related to Bach's misrepresentations of financial compensation." TAC, ¶ 49. "In summary of Plaintiff claim for intentional misrepresentation above: Bach stated in 2015-2016 that Sieler would be credited and financially compensated for his inventions, but Bach intended at the time to fire Sieler and steal credit to his inventions… The ensuing 2017 lawsuit was settled." *Id.*, ¶ 55.  The June 2017 action (which was dismissed with prejudice) and the current action both assert causes of action for misrepresentation arising from Sieler's employment and separation. Both lawsuits generally allege that Lucid made allegedly false representations to Sieler to convince him to join and to continue to work for Lucid. *Compare* Lara Decl., Ex. A, ¶¶ 19-21, *with* TAC, ¶¶ 10-11, 17.  Accordingly, as the TAC alleges the same claims that were previously alleged in the June 2017 Action, they must be dismissed. *Gonzales,*

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

739 F.3d at 1233.

To the extent Plaintiff attempts to assert that the misrepresentation and "concealment" claims asserted in this current lawsuit are somehow different than the past claims because they include slightly different promises related to his employment (pay and role in the first and public accolades for patents in the second), such an argument is unavailing. Both lawsuits allege harm arising from representations made to convince Plaintiff to be hired and remain employed and arising from Plaintiff's assertion that he was not compensated for all time worked and wrongfully terminated and, as such, they arise from the same primary right. Further, there is no doubt that the allegations could have been raised in the prior lawsuit. Specifically, Sieler's alleges he came up with the invention in February 2016. TAC, ¶ 13. He states Lucid approved the concept in March 2016, published a car including his invention in December 2016, and terminated him on January, 24, 2017. TAC, ¶¶ 15, 16, 17. He alleges that these claims were settled. TAC, ¶¶ 49, 55. Accordingly, as he purportedly created the invention and was terminated before he filed the June 2017 Action, Sieler could have raised the matters involving the lack of credit for his invention when he filed the June 2017.  Put simply, the misrepresentation claims were raised in the June 2017 Action. Any new matter in them relating to the pre-hiring discussion could have been raised in 2017.

### (iii) The Facts Alleged Do Not Establish a Duty to Disclose.

"There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: 1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact, and (4) when the defendant makes partial representations but also suppresses some material facts." *Bank of America Corp. v. Superior Court*, 198 Cal.App.4th 862, 871 (Cal. Ct. App. 2011). "The general rule is that even if material facts were known to one party and not another, the failure to disclose is usually not actionable fraud absent a fiduciary relationship giving rise to a duty to disclose." *Pastoria v. Nationwide Ins.,* 112 Cal.App.4th 1490, 1499 (Cal. Ct. App. 2003). The duty to disclose may also be established by statute. *See, Id.* Legal conclusions couched as factual allegations do not need to be accepted as true.

Sieler does not allege any facts showing a duty to disclose the patent application to him. No

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

statute establishing such a purported duty to disclose is alleged, nor is any fiduciary relationship giving rise to a duty to disclose alleged. The TAC does not allege that the Defendants made partial representations to Sieler. While the TAC titles the third claim for relief "Intentional Misrepresentation and Concealment/Non-Disclosure," no facts are alleged showing concealment.

### (iv) The TAC Does Not Allege That Lucid's Nondisclosure/Concealment Was Done With the Intent that Sieler Rely On It.

Actionable misrepresentation must be made with the intent that the plaintiff rely on the statement. "To establish a claim for deceit based on intentional representation, the plaintiff must prove… (4) the defendant intended that the plaintiff rely on the representation; [and] (5) the plaintiff reasonably relied on the representation." *Manderville v. PCG&S Group, Inc.* 146 Cal.App.4th 1486, 1498 (Cal. Ct. App. 2007). To establish a claim for negligent misrepresentation, the misrepresentation must be made "with intent to induce another's reliance on the fact misrepresented." *Fox v. Pollack,* 181 Cal. App. 3d. 954, 963 (Cal. Ct. App. 1986).

The TAC does not allege that the patent application was concealed or not disclosed with the intent that Sieler rely on the concealment/nondisclosure. In fact, it alleges a different intention. "Lucid's concealment and nondisclosure of the filed patent application was made… with the specific intent to deprive Mr. Sieler of inventorship and without providing due compensation or credit." TAC, ¶ 49. Concealing or not disclosing something with the intent to deprive someone of due compensation does not create a cause of action for intentional or negligent misrepresentation.

### (v) Sieler Does Not Allege That the Non-Disparagement Clause Was False At the Time.

An action for misrepresentation based on a false promise requires that the promisor did not intend to perform. "The critical alleged misrepresentation… did not involve a past or existing material fact. Rather, it involved a promise to perform at some future time….To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (Cal. Ct. App. 1991).

Sieler is alleging that the non-disparagement clause was a false promise. "Defendant [Lucid]

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

further represents that its CEO, CFO, CTO and its Director-level employees *will not*… make defamatory or otherwise injurious statements concerning Plaintiff [Sieler]." TAC, ¶ 50 (emphasis added). This alleged misrepresentation is in the future tense, making it an alleged false promise.

Sieler does not show that Lucid did not intend to perform the promise in the non-disparagement clause at the time the agreement was made. The TAC alleges that "[a]t the time of this statement, Lucid has [sic] already secretly filed a patent application that omits Mr. Sieler as an inventor, which would be an injurious statement even if it does not arise to the level or defamation. Lucid intended to publish to the world that Mr. Sieler is not the inventor." TAC, ¶ 50.  However, filing a patent without naming someone is quite simply not disparagement.  A patent is not an "injurious statement concerning Plaintiff [Sieler]." Moreover, the TAC does not allege that anyone at Lucid intended the patent to be such an "injurious statement" at the time of the settlement agreement. Beyond that filing, the TAC does not allege that Lucid or its CEO, CFO, CTO or Director-level employees intended to make defamatory or otherwise injurious statements concerning Sieler at the time of the agreement.   Again and importantly, it is insufficient to assert that Lucid entered into the agreement and later breached it (e.g. a breach of contract claim), to establish misrepresentation Sieler must assert facts to support that Lucid *intended* to breach the agreement *when they entered into it*.  The TAC fails to show that the non-disparagement clause was a misrepresentation; thus, Sieler does not have a likelihood of success on this claim.

### (vi) Facts Showing a Duty to Avoid Negligent Misrepresentation Are Not Alleged.

"[U]nder California law, a defendant's general duty to refrain from negligent conduct is not coterminous with the more specific duty to avoid making negligent misrepresentations." *Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F.Supp.3d 1117, 1125 (N.D. Cal 2015). "[T]o state a claim for negligent misrepresentation, a plaintiff must be a member of a 'specific class of persons' involved in a transaction that the defendant 'supplier of information intends the information to influence.'" *Id.* (citing *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 414 (Cal. 1992) (in bank).

Sieler makes no allegation that he is a member of a specific class of persons that Defendants intend to influence. No facts supporting such an allegation are plead. The TAC does not allege that

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1   Defendants had undertaken to inform or guide Sieler or anyone else with respect to any identified

2   transaction or type of transaction. Sieler has not alleged any facts that could plausibly lead to the

3   conclusion that the Defendants had the specific duty to avoid making negligent misrepresentations.

4                    **(vii)    Negligent Concealment or Non-Disclosure is Not Actionable.**

5           "There is no liability for implied representations, much less negligent nondisclosure or

6   concealment." *Ohio Six Limited v. Motel 6 Operating L.P.*, Case No. CV 11-8102 MMM (Ex), 2012 WL

7   12886208 at *14 (C.D. Cal. Nov. 16, 2012).  To establish its negligent misrepresentation claim, the TAC

8   alleges "Lucid filed the patent application for Sieler's invention, naming Bach as inventor, right before

9   the 2018 settlement, avoiding detection (conceal/nondisclosure)." TAC, ¶ 55. The TAC alleges negligent

10  misrepresentation based on concealment and non-disclosure. Under California Law there is no liability

11  for negligent concealment or non-disclosure.

12                   **(viii)   The Misrepresentation Claims Are Barred By the Statute of**

13                             **Limitations.**

14          The statute of limitations for fraud, i.e. intentional misrepresentation, is three years. Cal. Code

15  Civ. Proc. § 338(d)). Negligent misrepresentation claims have a two-year statute of limitation if

16  considered a negligence claim, or a three-year statute of limitations if considered a fraud claim. *William*

17  *L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal.App.4th 1294, 1313-1314 (Cal. Ct. App. 2012).

18  Every alleged "misrepresentation", including the "concealment/nondisclosure(s)" that are allegedly part

19  of the settlement agreement occurred on February 1, 2018 at the latest. Bach's statement occurred "in

20  2015-2016." TAC, ¶ 49. Lucid filed the patent application "right before the 2018 settlement, avoiding

21  detection (conceal/nondisclosure)." TAC, ¶ 55. The representation in the settlement agreement can at

22  the latest be considered to have been made on the date of the settlement agreement, Feb. 1, 2018. Doc.

23  63-1 p.15. The most recent alleged acts of misrepresentation occurred almost four years before the initial

24  complaint was filed in January 2022.

25          For all the foregoing reasons, Sieler fails to establish a probability of success on the negligent

26  and intentional misrepresentation claims.

27  / / /

28  / / /

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

d.    **Step Two: Sieler Cannot Meet his Burden of Establishing a Probability of Success on His Unfair Competition Claim (Fifth Claim for Relief) Against Defendants.**

"California provides both statutory and common law causes of action for unfair competition. The statutory cause of action is governed by Cal. Bus. & Prof. Code § 17200, et seq." and the common law. *Duncan v. Stuetzle*, 76 F.3d 1480, 1489 (9th Cir. 1996). Sieler alleges that Defendants engaged in "unlawful, unfair, or fraudulent business acts" by terminating him after he invented Patent '763; publicly discrediting him as an inventor of Patent '763; and filing the patent in November 2017 "in secret," prior to entering into the 2018 settlement agreement.  TAC, ¶ 58.  Here, the TAC does not specify whether the unfair competition cause of action is statutory or under common law.

(i)  **Sieler Released Lucid From Liability for the Unfair Competition Claim and it is Precluded by the Previous Judgment.**

███████████████████████████████████████████████████

████████████████████████ Doc. 63-1 p. 5. With his unfair competition claim as well, Sieler is attempting to raise a claim that he released in 2018.  In 2017, Sieler alleged an unfair competition cause against Lucid. Lara Decl., Ex. A, ¶¶ 72-75.  For the reasons outlined in section A.c.ii *infra*, this claim is also subject to claim preclusion.

(ii) **The Alleged Facts Do Not Establish a Cause of Action for Common Law Unfair Competition.**

"The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another… According to some authorities, the tort also includes acts analogous to 'passing off'" *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1263 (Cal. 1992). "[D]istrict courts in California have … limit[ed] common law unfair competition to allegations of 'passing off' or analogous acts."  *SkinMedica, Inc. v. Histogen Inc.*, 869 F.Supp.2d 1176, 1187-1188 (S.D. Cal. 2012).

The TAC fails to state a claim for common law unfair competition. It does not allege Lucid passed off its goods as those of Sieler. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) ("Sybersound has not alleged that the Corporation Defendants have passed off their goods

1   as those of another nor that they exploit trade names or trademarks and thus, has not stated a common

2   law unfair competition claim.")

3   ### (iii) Sieler Has Not Plead Facts Sufficient to Confer Standing for Statutory

4   ### Unfair Competition.

5   California Unfair Competition Law (the "UCL"), Bus. & Prof. Code, § 17200 et seq., confers

6   standing only for persons who have "lost money or property." *Kwikset Corp. v. Superior Court*, 51

7   Cal.4th 310, 323 (Cal. 2011).

8   Notably, this is the third time that Lucid has presented this argument in its motions to dismiss.

9   This is Sieler's fourth bite at the apple and he has still failed to allege a scintilla of lost money or property.

10  The only reasonable conclusion is that Sieler is unable to do so because he has not lost any money or

11  property from Lucid's alleged unfair competition. The TAC summarily alleges "damage to Mr. Sieler's

12  reputation, credibility, business relations, loss of business opportunity, loss employment and/or income,

13  and ability to command higher compensation," but the TAC does not assert any facts that would support

14  this conclusory assertion, such as specific loss of employment and/or sources of income. Without such

15  allegations, a bare inference that Sieler, in fact, lost money or property as a result of "reputational

16  damage" is unsupported and would require unwarranted inferences unable to withstand a motion to

17  dismiss. Therefore, the TAC does not allege facts sufficient to establish that Sieler has standing.

18  ### (iv) Sieler Failed to Plead that the Individual Defendants Directly and

19  ### Actively Participated in an Unfair Business Practice.

20  Plaintiff failed to plead sufficient facts to establish that the Individual Defendants took any

21  specific action evidencing they actively and directly personally participated in the unfair business

22  practice at issue. *See Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (Cal. Ct. App. 2008).  Rather,

23  Sieler cursorily pleads that Lucid used Mr. Sieler "in collusion with each of the Individual Defendants."

24  Sieler cannot, in good faith, allege that the Individual Defendants actively, directly, or personally

25  engaged in the alleged unfair business practices at issue.

26  ### (v) This Claim is Barred by the Four Year Statute of Limitations

27  Unfair competition claims have a four year statute of limitations. "'Any action to enforce any

28  cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO
STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1

1    accrued'" *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1192 (Cal. 2013). The TAC alleges

2    that Lucid engaged in unfair business practices when it filed the patent application in November 2017.

3    TAC, ¶ 58. November 2017 is more than four years before the first complaint was filed, on January 5,

4    2022. The TAC also alleges that Lucid advertises that Individual Inventors are the inventors of the

5    Invention "After 2017." TAC, ¶ 59. By any definition of the phrase, "after 2017" includes January 1,

6    2018, which more than four years before January 5, 2022 when the complaint was filed.

7             e.    **Step Two: Sieler Cannot Meet His Burden of Establishing a Probability of**

8                   **Success On His Breach of Contract Claim (Sixth Claim for Relief) Against**

9                   **Defendants.**

10               **(i)  The Clause States that Lucid Will Not Make Defamatory or Otherwise**

11                   **Injurious Statements Concerning Sieler.**

12         "The fundamental goal of contractual interpretation is to give effect to the mutual intention of

13    the parties." *County of San Diego v. Ace Property & Casualty Ins. Co.*, 37 Cal.4th 406, 415 (Cal. 2005).

14    "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* "If

15    contractual language is clear and explicit, it governs." *Id.* "The settlement agreement contains a material

16    non-disparagement clause that states that "Defendant [Lucid] further represents that its CEO, CFO, CTO

17    and its Director-level employees will not, either orally or in writing, make defamatory or otherwise

18    injurious statements concerning Plaintiff [Sieler]." TAC, ¶ 65. The agreement contains clear and explicit

19    language stating that Lucid will not make defamatory or otherwise injurious statements concerning

20    Sieler, this language governs.

21              **(ii) There is No Breach Alleged, Sieler Has Not Alleged Any Defamatory or**

22                  **Injurious, or Otherwise Disparaging Statements Concerning Him.**

23         "The term 'disparage' is defined variously as 'to lower in rank or reputation,' 'to depreciate by

24    indirect means (as invidious comparison): speak slightingly about, 'treat or speak of with disrespect:

25    belittle,' and 'bring discredit upon.'" *Vivian v. Labrucherie*, 214 Cal.App.4th 267, 277 (Cal. Ct. App.

26    2013) (internal citations omitted). Sieler has not alleged a single statement that is either defamatory,

27    injurious, or disparaging by any definition recognized in California. Sieler has not alleged a defamatory

28    statement. Filing a patent, claiming that an invention was made "in-house," and speaking to the

disadvantages of stepper motors, do not defame, injure, or depreciate Sieler. Further, no particular statement by any of the Defendants that concerns Sieler is alleged. These allegations, do not allege a statement that would be a breach of the contract's non-disparagement clause, and thus Sieler cannot show a probability of success on the breach of contract claim..

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests this Court to grant the Special Motion to Strike and dismiss Sieler's defamation, intentional misrepresentation, negligent misrepresentation, negligence, and breach of contract causes of action without leave to amend.

Dated:  September 2, 2022

FISHER & PHILLIPS LLP

By:    _/s/ Danielle S. Krauthamer_
JASON A. GELLER
DANIELLE S. KRAUTHAMER

HARNESS, DICKEY & PIERCE, P.L.C.
Monte L. Falcoff (*Pro Hac Vice pending*)
Glenn. E. Forbis (*Pro Hac Vice pending*)
Jeremiah J. Foley (*Pro Hac Vice pending*)

Attorneys for Defendants
ATIEVA, INC., HANS-CHRISTOPH
ECKSTEIN; WIEBKE ECKSTEIN;
and ERIC MAGNUS BACH

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 45129490.1